# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **PEGGY S. SALYERS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00038 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee and Jason Mullins, Lee & Phipps, PC, Wise, Virginia, for Plaintiff. Eric P. Kressman, Regional Chief Counsel, Region III, Kimberly Varillo, Assistant Regional Counsel, Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Peggy S. Salyers filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 401-433

(West 2011) and 1381-1383f (West 2003 and Supp. 2011). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Salyers filed her initial application for benefits on August 1, 2006, claiming disability since June 2006. Her claim was denied initially and upon reconsideration, and by the ALJ, after a hearing at which Salyers, represented by counsel, and a vocational expert testified. On September 12, 2008, while her claim was before the Social Security Administration Appeals Council, Salyers filed a new claim alleging an onset date of August 12, 2008. The Appeals Council remanded her initial claim file which was consolidated with her new claim. Her claim was again denied initially and on reconsideration. Another hearing was held before the ALJ at which Salyers, represented by counsel, an independent vocational expert, and a medical expert testified. On May 12, 2010, the ALJ issued her decision finding that Salyers was not disabled. She concluded that Salyers retained the residual functional capacity ("RFC") for a range of unskilled light work with certain restrictions and, based on the testimony of the vocational expert, would be able to do work existing in the national economy. The Appeals Council denied Salyers' request for review. Salyers then filed her Complaint in this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and I heard oral argument on February 27, 2012. The case is ripe for decision.

## II

Salyers was born on November 13, 1968, making her a younger individual under the regulations. *See* 20 C.F.R. §§ 404.1563, 416.963 (2011). She left school at age 16 but later received her GED. Her past relevant work includes waitress, cashier, cutting machine operator, and textile inspector. She alleges disability due to hypertension, heart problems, breathing problems, a thyroid problem, kidney stones, anxiety, depression, headaches, and degenerative disc disease.

In June 2004, Salyers underwent an MRI of the lumbar spine which showed minimal degenerative disc disease at L4-L5 and a mild broad-based disc bulging. In November 2004, she was evaluated by Paul C. Peterson, M.D., a neurosurgeon associated with Blue Ridge Neuroscience Center, P.C. She was complaining of lower lumbar pain and left lower extremity pain. Though the physical exam showed tenderness and decreased range of motion in the lumbar spine, overall findings were minimal. Dr. Peterson opined that no additional diagnostic studies were needed and referred her to physical therapy. He also stated that she could continue working as a waitress full time. Salyers was noncompliant with her physical therapy treatment.

In March 2006, Salyers presented to Community Medical Care to establish primary care. She complained of back pain and anxiety due to family circumstances. She sought treatment for her pain complaints at approximately two

week intervals. Examinations showed tenderness of the lumbar spine but normal ranges of motion and good muscular coordination and strength. She was prescribed Xanax for her anxiety.

In May 2006, Salyers was evaluated by Felix Shepard, Jr., M.D., for her lower back pain and urinary urgency. Physical examination of the back was within normal limits and urinalysis results were negative.

In June 2006, Salyers had a follow up appointment at Community Medical Care with Joselin Tacas, M.D. She complained of back pain and anxiety and asked Dr. Tacas to write a letter of disability. Dr. Tacas refused, stating that she was not comfortable writing such a letter because he wanted her to see a neurosurgeon.

In July 2006, she was evaluated by Gregory Corradino, M.D., a neurosurgeon. She informed him that she had stopped working due to back pain but that she had not undergone physical therapy, epidural steroid injections, or a pain management evaluation. Physical examination showed only tenderness of the parapsinal muscles and trace edema of the lower extremities with diminished pedal pushes. Dr. Corradino reviewed an MRI that had been done in May 2006 and stated that no surgical intervention was warranted. He recommended physical therapy and pain management and did not prescribe any medications or require any follow up appointments.

Treatment notes from July 2006 through April 2007 by Dr. Tacas show primarily tenderness of the lumbar spine without further significant clinical observations. She continued to have full range of motion of the cervical spine, shoulders, elbows, hands/fingers, hips and knees. From October 2006 through May 2007, her lumbago was considered controlled by narcotic pain medication. She also had continuous complaints of anxiety but her anxiety was considered controlled by medication. In June 2007, she complained of increasing lower back pain but her physical examination was unchanged and Dr. Tacas did not change her treatment regime. In October 2007, her lumbago was again diagnosed as controlled.

In August 2007, Salyers presented for an intake assessment for mental health services by Michael Williams, LCSW. The mental status examination indicated her mood was depressed and irritable and her affect as actions. She reported suicidal ideation without a plan. Williams assessed Salyers global assessment of function ("GAF") at 47, indicative of serious symptoms and limitations. However, he did not refer her to inpatient treatment or a psychiatrist. In February 2008, Williams completed a source statement assessing Salyers as having marked to extreme limitations in certain basic mental work-related activities and interactions.

In October 2007, Salyers presented to the emergency room complaining of lower back pain after falling down the stairs. An X ray of the sacrum and coccyx

showed a subtle longitudinal fracture at the second coccygeal segment. By March 2008, a follow-up X ray showed healing of the fracture.

In March 2008, Salyers underwent a consultative examination by Kevin Blackwell, D.O. Physical examination showed only tenderness in the thoracic and sacrum areas, slightly diminished reflexes and decreased range of motion of the lumbar spine. Dr. Blackwell observed that Salyers had a good mental status. Dr. Blackwell assessed that Salyers had the capacity to perform a range of work at the medium level of exertion.

Also in March 2008, Salyers underwent a consultative psychological examination by B. Wayne Lanthorn, Ph.D. Mental status examination showed that she was oriented in all spheres with a flat and blunt affect. She also showed signs of anxiety. Dr. Lanthorn diagnosed her with generalized anxiety disorder, panic disorder, major depressive disorder, recurrent, moderate, and pain disorder. He assessed her GAF at 50 to 55, indicative of moderate symptoms. He submitted a statement assessing marked limitations in basic work-related activities.

In March 2008, Dr. Tacas completed an assessment of Salyers' ability to perform physical work-related activities. Dr. Tacas opined that, due to severe lumbago, Salyers was limited to standing/walking one hour in an 8-hour day and sitting one hour in an 8-hour day, among other limitations. Dr. Tacas stated that Salyers' impairments would cause her to miss more than two days of work a

-6-

Case 1:11-cv-00038-JPJ-PMS   Document 19   Filed 03/22/12   Page 6 of 18   Pageid#: 1564

month. Dr. Tacas also completed an assessment of Salyers' mental limitations which noted only mild limitations.

Salyers followed-up with Dr. Tacas in April 2008. Dr. Tacas noted that she declined physical therapy treatment. Treatment notes from July 2008 through December 2008 show tenderness and muscle spasms of the lumbar spine, but no other abnormalities.

Salyers was hospitalized from January 1, 2009, through January 28, 2009, for detoxification from opioid and sedative dependence. She had reportedly been taking significant amounts of Lortab and Xanax daily for the past two to three years. Upon discharge, her GAF had improved to 61 to 70, indicative of only mild symptoms and limitations. She did not comply with the recommended treatment after being released from the hospital.

In March 2009, Dr. Tacas completed a second statement of Salyers' mental ability to do work-related activities. She concluded that Salyers would be both extremely and markedly limited in her ability to carry out a variety of work-related activities. She also concluded that Salyers' impairments would result in her being absent from work in excess of two days a month.

On September 15, 2006, Thomas Phillips, M.D., a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment. He opined that Salyers would be able to lift and carry 20 pounds occasionally and 10

pounds frequently; stand/walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; and occasionally crawl, crouch, kneel, stoop, balance and climb. He also concluded that she would need to avoid concentrated exposure to hazardous machinery and heights. Robert McGuffin, M.D., reviewed the record on October 5, 2007 and affirmed Dr. Phillips' determination.

Joseph Leizer, Ph.D, state agency psychologist, reviewed the record on September 19, 2006, and opined that Salyers did not have a severe mental impairment. Louis Perrott, Ph.D., another psychological expert, reviewed the record on October 5, 2007, and agreed with Dr. Leizer's assessment.

On December 11, 2008, Shirish Shahane, M.D., a state agency medical consultant, completed a physical residual functional capacity assessment. His opinion was essentially the same as that of Dr. Phillips. Joseph Duckwall, M.D., another state agency physician, reviewed the evidence as of May 19, 2009, and affirmed Dr. Shahane's determination.

On December 11, 2008, Julie Jennings, Ph.D., state agency psychologist, completed a psychiatric review of the record. She concluded that Salyers' mental impairments resulted in moderate restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. Dr. Leizer reviewed the evidence as of May 20, 2009, and

opined that Salyers' mental impairments resulted in mild restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.

At the March 2010 hearing, Salyers testified that she had stopped working because of her back pain and that she was on medication for that pain. She testified that she has a lot of anxiety and depression and that she has panic attacks almost every day, once or twice a day. Marshall Tesmere, Ph.D, a clinical psychologist testified as an impartial medical expert. He testified that Salyers would have mild restriction with activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence, and pace without the effects of substance abuse. With substance abuse, he stated that her impairments would be moderate to marked. He noted that Salyers' only episode of decompensation was for detoxification. He concluded that she would be limited to simple, repetitive work with no interaction with the general public and only superficial interaction with co-workers.

The ALJ asked the vocational expert to consider an individual with Salyers' relevant background who had the RFC to perform light work with various limitations, including no interaction with the public and only superficial interaction with co-workers and supervisors. The vocational expert testified that such an

individual would be able to perform the requirements of various jobs available in the national economy, including an assembler, packer and inspector/tester/sorter.

In her decision, the ALJ concluded that Salyers suffered from the following severe impairments: migraine headaches, degenerative disc disease, history of pneumonia, anxiety, depression, obesity, panic disorder, and substance abuse disorder. However, none of these impairments met or equaled a listing level impairment. The ALJ determined that Salyers had the RFC to perform light work subject to various physical and mental limitations and, based on the testimony of the vocational expert, was able to perform certain jobs available in the national economy. The ALJ thus concluded that Salyers was not disabled.

On August 5, 2010, after the ALJ's determination of Salyers case, Anne Jacobe, LCSW, completed an assessment of Salyers ability to perform mental work-related activities and opined that Salyers had no useful ability to deal with stress. She further opined that Salyers had serious limitations in making occupation, performance, and personal-social adjustments. Finally, she stated that Salyers would likely be absent from work more than two days a month.

Salyers argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A) (2011), 1382c(a)(3)(B) (West 2003 & Supp. 2011).

In assessing DIB claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id*. The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past

relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Salyers first argues that the ALJ improperly substituted her opinions for those of a trained psychiatric professional. Specifically, Salyers argues that the ALJ failed to give the opinion of Dr. Lanthorn the proper consideration in her assessment of the RFC.

In formulating the RFC, the ALJ is required to consider not only opinion evidence, but all of the evidence in the record. *See* 20 C.F.R. §§ 404.1527,

416.927 (2011). The ALJ is required to evaluate every medical opinion in the record according to several factors to determine the weight to which the opinion is entitled. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Consistency with other evidence in the record is one of those factors. *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). *See also Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

The record indicates that the ALJ properly considered Dr. Lanthorn's opinion in light of the evidence as a whole and was within her discretion in according the opinion little weight. As a consultative examiner, Dr. Lanthorn's opinion is not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (noting that only a treating source's opinion is entitled to controlling weight). As the ALJ noted, Dr. Lanthorn's dire assessment of Salyers' mental capabilities conflicts with other contemporary assessments of her mental state in the record. It is also inconsistent with the opinions of multiple state-agency psychological experts and the testimony of the medical expert. Further, Dr. Lanthorn's assessment conflicts with his own treatment notes, which do not note clinical observations consistent with the severe limitations he imposed. Though he noted she displayed symptoms of anxiety, she was able to perform relevant tasks and he rated her GAF at 50 to 55, or only moderately limited. Finally, as the ALJ

-13-

noted, Dr. Lanthorn's assessment does not consider the effect of her substance abuse on her mental symptoms. She was, at the time of his examination, in the middle of her serious abuse of opiates and sedatives. For all these reasons, the ALJ properly accorded Dr. Lanthorn's opinion on Salyers' ability to do work-related activities little weight.

Salyers next argues that the ALJ failed to fully evaluate and accord the proper weight to Williams' opinion of her mental ability to do work-related activities. Williams, as a licensed clinical social worker, is not an acceptable medical source under the regulations. *See* 20 C.F.R. §§ 404.1513, 416.913 (2011). However, evidence from sources other than acceptable medical sources may be considered to show the severity of the claimant's impairments and how it affects her ability to do work. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). As always, opinion evidence is only part of what the ALJ must consider in determining the RFC and will only be accorded such weight as it merits in light of the factors listed in the regulations. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ reviewed and considered Williams' opinion but, in light of the lack of clinical support for the severe restrictions there outlined, accorded the opinion little weight. Williams' opinion dictated both extreme and marked limitations on Salyers' ability to function but did not explain what clinical evidence supported these conclusions. Further, as the ALJ noted, Williams' opinion was inconsistent

-14-

with the course of treatment he prescribed for Salyers. He did not refer her to a psychiatrist or recommend she seek in-patient treatment.

Salyers argues that since the ALJ found Williams' opinion to lack support, she should have further developed the record. The record contained ample evidence of Salyers' mental impairments, including multiple opinions from her treating physicians, state agency psychologists and the testimony of a medical expert at her hearing. Further, the ALJ clearly considered both Dr. Lanthorn and Williams' opinions in concluding that Salyers' mental impairments were severe and in formulating the RFC, which provides for limitations based upon those mental impairments.

Salyers also argues that the opinion of Ann Jacobe, submitted after the ALJ's determination in this case, further supports Williams' opinion and should be considered. Under 42 U.S.C.A. § 405(g), the court may order additional evidence to be taken before the Commissioner of Social Security, but only if the new evidence is material and there is good cause for failing to incorporate the evidence in the record in a prior proceeding. Evidence "must be material to the extent that the Secretary's decision 'might reasonably have been different' had the new evidence been before her." *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (quoting *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

Jacobe's opinion supports the ALJ's RFC determination. Jacobe generally assesses Salyers ability to handle work-related activities as fair. She concludes that Salyers has a poor to no ability to deal with work stresses and handle complex job instructions. These limitations are reflected in the ALJ's RFC. Jacobe's opinion is not material to the extent that the ALJ's opinion might have been different had it been before her.

Salyers final argument is that the ALJ erred in failing to adhere to the so-called "treating physician rule" by not giving controlling weight to Dr. Tacas's opinion that Salyers' physical and mental disabilities imposed serious limitations on her ability to do work.

A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2011). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). When deciding the weight given to a treating physician's opinion, the ALJ considers factors such as supportability and consistency. 20 C.F.R. §§ 404.1527(d)(3-4), 416.927(d)(3-4).

Dr. Tacas's opinion that Salyers' disabilities impose severe restrictions on her ability to do work-related activities is not supported by the record as a whole or Dr. Tacas's own treatment notes. The ALJ carefully reviewed Dr. Tacas's treatment notes and her opinion and observed that Dr. Tacas prescribed a relatively conservative course of treatment for Salyers' physical maladies and anxiety. Dr. Tacas's notes show minimal findings upon examination and that Salyers' lumbago and anxiety were under control. The rest of the record supports the observations made in Dr. Tacas's notes. The MRI findings were minimal, the neurologists found little wrong, Salyers declined physical therapy, and state agency experts found that the record supported Salyers' ability to do light to medium work. This substantial evidence supports the ALJ's determination that Salyers' is not disabled. Given this, Dr. Tacas's opinion was not entitled to controlling weight.

In general, the evidence in the record supports the ALJ's conclusion that Salyers is not disabled and her determination of Salyers' RFC. The ALJ did not discount Salyers' physical and mental impairments; indeed, she found that Salyers had multiple severe impairments and adjusted the RFC to take account of Salyers consequential limitations. Her conclusion is supported by substantial evidence.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

      DATED: March 22, 2012

      /s/ James P. Jones
      United States District Judge

-18-

Case 1:11-cv-00038-JPJ-PMS   Document 19   Filed 03/22/12   Page 18 of 18   Pageid#: 1576